J. Richard Barnes, C.L.U. Division of Insurance Department of Regulatory Agencies 201 East Colfax, Room 106 Denver, Colorado 80203
Dear Commissioner Barnes:
This is in response to your October 23, 1980 letter, which poses nine questions concerning the interpretation of C.R.S. 1973,24-10-115(3), as amended in April, 1980 by Senate bill 121. For ready reference, C.R.S. 1973, 24-10-115(3), as amended by S.B. 121, is set out below. The underlined portion represents the amendment added by S.B. 121.[1]
QUESTIONS PRESENTED AND CONCLUSIONS
1a. Are funds raised by mill levy pursuant to Senate bill 121 specifically limited to self-insurance needs of a district?
 Yes. Under Senate bill 121 a school district must use the special 1.5 mill levy funds to establish a self-insurance reserve fund for liability and property damage self-insurance purposes. However, as is pointed out below, money from the reserve fund can be used to pay insurance premiums until such time as the commissioner determines the fund to be adequate.
1b. May these funds also be used for basic insurance coverages purchased from admitted companies?
 Yes, the special mill levy can be used to pay liability and property damage insurance premiums until such time as the reserve fund is determined to be adequate. However, the payment of insurance premiums cannot be allowed to prevent a district from making reasonable progress toward establishing a feasible self-insurance fund.
2. Does Senate bill 121 contemplate that funds raised through the special mill levy are to be used only for extraordinary and catastrophic type claims, or may they be used for self-insurance purposes such as large deductibles, retentions and coinsurance amounts?
 Senate bill 121 contemplates that the special mill levy funds will be used by a school district to establish a fund that is adequate to meet its self-insurance plan. A self-insurance plan could include such elements as large deductibles, retentions, and coinsurance amounts.
3a. What should be the definition of "insurance reserve fund"?
 C.R.S. 1973, 24-10-115(3), as amended, appears to envision a fund which will ultimately be used to pay all of a school district's costs associated with the portion of its liability and property damage risk for which it has assumed full responsibility. However, under the statute, while the school is building an adequate self-insurance reserve fund it can also use the fund to pay its property damage and liability insurance premiums. Once the self-insurance reserve fund is determined to be adequate, both the cost of insurance premiums as well as the cost of returning to the fund those expenses and losses paid out of the fund, must be borne by the school district's general fund.
3b. More specifically, what is the difference in the use of monies raised through the special mill levy as compared to the specific use of funds appropriated by the general appropriation for the school district which includes the payment of commercial insurance premiums?
 The first sentence in the amendment section of S.B. 121 clearly states that a school district may raise funds through the special mill levy for "liability and property damage self-insurance purposes." The very next sentence states that the amount of money raised by the special mill levy shall not exceed an amount adequate for "such reserve fund." It is clear therefore that the legislature intended the special mill levy funds to be used for the establishment of a reserve fund to be used for self-insurance purposes, i.e., for a special fund which will be used to pay property and liability losses on claims which the district has chosen to self-insure. However the sentence in S.B. 121, beginning "subsequent to," as interpreted in question 5 below, allows a school district to use the special mill levy monies also to pay certain insurance premiums up to the point at which its insurance reserve fund is determined to be adequate. The clear intent of the statute was to have school districts establish self-insurance reserve funds with the special mill levy money. Funds appropriated by a school district for insurance purposes from its general fund are not limited to the establishment of a reserve fund. A school district can spend such funds on commercial insurance premiums or other suitable insurance needs.
4. Pursuant to Senate bill 121, must the Insurance Division make a determination of the adequacy of the reserve fund for the initial year of a self-insurance fund, or is this determination limited to subsequent years and the continuation of the mill levy?
 Under Senate bill 121, the division must review the amount to be set aside for the self-insurance reserve fund from the first year that the fund is established.
5. In conjunction with the balance of the statute what is meant by the following excerpt from Senate bill 121:
 Subsequent to determination that the amount of the reserve fund is adequate, money for the payment of any liability and property insurance premiums and for payments into the reserve fund to cover the cost of operations and expected losses out of the insurance reserve fund shall be budgeted from the school district's general fund?
 By including this sentence in the statute, the legislature has recognized the fact that it may be impossible for a school district to establish an adequate insurance reserve fund the first year. Until the fund is determined to be adequate the special mill levy monies will be available to the fund and the fund, in turn, can be used to pay certain insurance premiums. However, once it is determined that the reserve fund is adequate, the fund will be maintained by the district's general fund and will be used to pay only the operating costs and losses associated with those claims which the district has decided to self-insure.
6. Can funds raised through the Senate bill 121 authorized special mill levy be used to participate in pooling arrangements as contemplated by section 24-10-115.5? If the answer is "yes" can funds be raised through this levy now to participate in a planned pooling arrangement which has not yet been established?
 The answer to the first question is yes. The answer to the second question is also yes if the Division of Insurance determines that the planned pooling arrangement has a substantial chance of receiving division approval pursuant to C.R.S. 1973, 24-10-115.5. However, any authorization to use special mill levy funds for such a planned pooling arrangement should be made contingent upon the requesting district having an alternative insurance plan in the event that the proposed pool is not approved. Under the alternative plan, the district would have to be prepared to operate its individual insurance reserve fund without participation in the planned self-insurance pool.
7. As part of the Insurance Division's determination of reserve adequacy, must accumulated unused reserve balances from mill levies made and received prior to Senate bill 121 be considered?
The answer is "yes."
ANALYSIS
Question 1(a) asks whether funds raised by the Senate bill 121 special mill levy can be used only for a school district's self-insurance needs. The answer is that while the district is accumulating an adequate insurance reserve fund, the fund can be used to pay both the operating costs and losses from the fund as well as the district's property damage and liability insurance premiums. However, once the fund is determined by the commissioner to be adequate, the fund will be maintained, not through the special mill levy, but from the district's general fund.
Question 1(b) asks whether funds raised through the special mill levy can be used to purchase regular insurance coverage.
Prior to the passage of Senate bill 121, C.R.S. 1973, 24-10-115(3) allowed any public entity to establish a self-insurance reserve fund. Under the old statute, the amount that a school district could raise for the fund through a levy was not limited. An obvious purpose of S.B. 121 is to limit the amount that a school district can levy for its self-insurance reserve fund. The sentence reading "subsequent to determination. . . ." which is discussed in question 5 below treats school districts differently from other public entities. Under this provision a school district can use money from its insurance reserve fund to pay for insurance premiums but only until the reserve fund is determined by the commissioner to be adequate. Once the fund is determined to be adequate, insurance premiums can only be paid for out of the school district's general fund.
Question 2 asks whether the special mill levy funds are to be used only for extraordinary and catastrophic type claims or whether such funds can be used for self-insurance purposes such as large deductibles, retention, and coinsurance amounts. As noted, the statute provides that the mill levy funds are to be used to establish a self-insurance reserve fund. Large deductibles, retentions, etc. could well be a part of a particular district's self insurance plan.
Question 3(a) asks for the definition of the term "insurance reserve fund." The statute describes a self-insurance fund which will ultimately be used to meet both the expenses of operating the fund and the losses to a school district arising out of that portion of the potential liability or property damage claims for which it is assuming the risk on its own. Until the fund is adequate to meet this self-insurance need it can be used also to pay the cost of the district's property damage and liability insurance policies.
Question 3(b) asks what the difference is between the use of funds raised by the special mill levy and the use of funds appropriated by the school district for insurance purposes from its general fund.
Funds raised under the special mill levy can be used only for the property and liability self-insurance reserve fund. When an entity self-insures it assumes on its own the risk that it will suffer a particular loss rather than contracting with someone else, i.e. an insurance company, to assume the risk. The fund can be used to meet the cost of operating the fund and the losses associated with that portion of the property and liability risk for which the district has decided to self-insure. In addition until the fund is determined by the commissioner to be adequate the fund can be used to meet the cost of the district's liability and property damage insurance premiums. Once the fund is determined to be adequate, the premiums for commercial liability and property insurance policies as well as the cost of operating the fund and the losses incurred by the fund must come from the school district's general fund.
The 1.5 mill levy will raise a specific amount of money for each district. Each district must develop a self-insurance plan for which the amount of money ultimately raised will be adequate.[2] As pointed out in the analysis to question 5 below, once the fund is determined to be adequate, it is maintained not by special mill levy but by the district's general fund, unless the district is entitled to a continuation or reapplication of the special mill levy.
Question 4 asks whether under Senate bill 121 the Insurance Division must make a determination of the adequacy of a school district's reserve fund for the initial year of the fund or whether the determination must be made only as to subsequent years. The second sentence in Senate bill 121 reads in part as follows:
 In no case shall the revenue raised by any school district exceed an amount adequate for such reserve fund, which shall be determined in a manner similar to, and the payment of the cost thereof shall be in the same manner as, that provided in section 24-10-115.5;
This sentence states that "in no case" shall the revenue raised by any school district exceed an adequate amount. It is therefore clear that the Division of Insurance must make its review from the very outset of the establishment of a school district's self-insurance fund.
Question 5 asks for an interpretation of the sentence which reads:
 Subsequent to determination that the amount in the reserve fund is adequate, money for the payment of any liability and property insurance premiums and for payments into the reserve fund to cover the cost of operations and expected losses out of the insurance reserve fund shall be budgeted from the school district's general fund.
This sentence indicates that the legislature recognized that a school district might not be able to accumulate an adequate insurance reserve fund in one year. Accordingly, while the fund is being accumulated and prior to the time that the commission has determined the fund to be adequate, a district may also use the reserve fund to pay its property damage and liability insurance premiums. However, once the reserve fund is determined to be adequate both the cost of insurance premiums and the cost of maintaining the reserve fund must be paid out of the district's general fund. The commissioner will have to determine when a school district's reserve fund is adequate. This determination will have to take into account the particular self-insurance plan to be adopted by the district. The intent of the statute is clearly to have the school districts establish reserve funds. Therefore, a district could not spend so much of its mill levy money on premiums that it could not establish an adequate reserve fund within a reasonable period of time. The commissioner will have to set standards determining "adequacy" and "reasonable time" in this regard.
S.B. 121 provides that in his review of a district's reserve fund, "the commissioner shall determine the need for continuation of the mill levy for the insurance reserve fund." The statute therefore contemplates that there are circumstances under which the mill levy will be continued. The commissioner should implement the power granted with regard to continuation of the mill levy by promulgating regulations pursuant to C.R.S. 1973,10-1-109.
Question 6(a) asks whether S.B. 121 special mill levy funds can be used to participate in a C.R.S. 1973, 24-10-115.5 self-insurance pool.
The pooling arrangement authorized by C.R.S. 1973, 24-10-115.5 is a form of self-insurance. S.B. 121 allows a school district to include a special tax levy for an insurance reserve fund to be used for self-insurance purposes. A school district can therefore use special mill levy money to set up a self-insurance reserve fund which will in turn be used to participate in a C.R.S. 1973,24-10-115.5 self-insurance pool. However, it should be noted that whereas a self-insurance pool under 24-10-115.5 is a self-insurance mechanism, S.B. 121 does not allow for a special mill levy to fund a pool directly. Therefore, even though a school district may participate in a pool, it must, in order to use the special mill levy, set up its own insurance reserve fund.
Question 6(b) asks if the commissioner can allow a district to use special mill levy funds to participate in a self-insurance pool that has not yet been established.
Under C.R.S. 1973, 24-10-115.5, public entities are permitted to pool their resources to form a self-insurance pool to provide all or a part of the insurance authorized by C.R.S. 1973, 24-10-101et seq.
You have informed me that there is a particular problem this first year in coordinating approval of self-insurance plans submitted pursuant to S.B 121 and C.R.S. 1973, 24-10-115.5. Because of unfamiliarity with the precise requirements of S.B. 121, some school districts which wish to use their insurance reserve fund to participate in pooling arrangements have submitted plans for their insurance reserve funds which do not quite comply with the dictates of S.B. 121. At the same time, these districts have filed the documents required for a pooling arrangement to be capitalized by said insurance reserve funds. Approval of the pooling arrangement has therefore been delayed.
I see nothing in the statute which prohibits you from approving a self-insurance reserve insurance fund arrangement which is to be used to capitalize a pooling arrangement filed but not approved under the circumstances you describe. However, in order to insure that if the pool is not approved, the special mill levy funds are properly utilized, you should require that the affected district have an alternate plan to run its individual fund without pool participation.
Question 7 asks if a school district's reserve fund, accumulated from mill levies made prior to S.B. 121, must be considered in determining reserve adequacy. S.B. 121 provides for an insurance reserve fund; no distinction is drawn between those established pursuant to S.B. 121 and those established after S.B. 121. The obvious purpose of S.B. 121 was to make available special mill levy monies to a school district with which the school district could establish an adequate self-insurance reserve fund. If a school district already has a self-insurance reserve fund, it may or may not, depending on whether the fund is adequate, need the special mill levy money. An existing reserve fund must be taken into account in determining whether a district's proposed mill levy will raise an excessive amount of money, therefore a district which already has an adequate reserve fund would not be allowed a special mill levy.
SUMMARY
S.B. 121 allows school districts a special mill levy of up to 1.5 mills to be used for liability and property damage self-insurance purposes. The money is to be used to establish a self-insurance reserve fund. Until the fund is determined by the commissioner to be adequate, the bill also permits the fund to be used to pay liability and property damage insurance premiums. The statute appears to envision the possibility that the special mill levy could be continued and the commissioner should promulgate regulations defining when a continuation will be allowed. S.B. 121 does say, however, that once the fund is adequate, it will be maintained, not from the special mill levy, but from the school district's general fund. S.B. 121 special mill levy funds can be used indirectly to participate in self-insurance pools under C.R.S. 1973, 24-10-115.5, but in order to be entitled to a special mill levy under S.B. 121, a school district must establish its own insurance reserve fund. The commissioner must consider existing pre-S.B. 121 insurance reserve funds in determining the adequacy of a school district's proposed S.B. 121 insurance reserve fund.
Very truly yours,
 J.D. MacFARLANE Attorney General
INSURANCE SCHOOL DISTRICTS EDUCATION
C.R.S. 1973, 24-10-115(3)
REGULATORY AGENCIES, DEPT. Insurance, Div. of
C.R.S. 1973, 24-10-115(3) allows school districts a special mill levy of up to 1.5 mills to be used for liability and property damage self-insurance purposes. The money is to be used to establish a self-insurance reserve fund. Until the fund is determined by the commissioner to be adequate, the bill also permits the fund to be used to pay liability and property damage insurance premiums.
[1] (3) A public entity, other than the state, may establish and maintain an insurance reserve fund for self-insurance purposes and may include in the annual tax levy of the public entity such amounts as are determined by its governing body to be necessary for the uses and purposes of the insurance reserve fund, subject to the limitations imposed by section 29-1-301, C.R.S. 1973. In the event that a public entity has no annual tax levy, it may appropriate from any unexpended balance in the general fund such amounts as the governing body shall deem necessary for the purposes and uses of the insurance reserve fund. The fund established pursuant to this subsection (3) shall be kept separate and apart from all other funds and shall be used only for the payment of administrative and legal expenses necessary for the operation of the fund and for the payment of claims against the public entity which have been settled or compromised or judgments rendered against the public entity for injury under the provisions of this article or to secure and pay for premiums on insurance as provided in this article. School districts may include an annual tax levy for liability and property damage self-insurance (3) or under section 29-13-101 (3), C.R.S. 1973, or under both said subsections. In no case shall the revenue raised by any school district exceed an amount adequate for such reserve fund, which shall be determined in a manner similar to, and the payment of the costs thereof shall be in the same manner as, that provided in section 24-10-115.5; except that the commissioner of insurance shall review the school district's determination of the amount to be raised by said tax levy, which review shall be made no later than October 20 of each year. In such review, the commissioner shall determine the need for continuation of the mill levy for the insurance reserve fund. Subsequent to determination that the amount in the reserve fund is adequate, money for the payment of any liability and property insurance premiums and for payments into the reserve fund to cover the cost of operations and expected losses out of the insurance reserve fund shall be budgeted from the school district's general fund. The commissioner of insurance may determine that the insurance reserve levy should be reapplied because the insurance reserve fund has experienced extraordinary claims.
[2] Estimate figures received from the Department of Education indicate that a 1 mill levy would raise $2,186,720 in the Denver School District and approximately $1,751 in the El Paso Edison School District. In light of the great disparity between the amounts of money that can be raised by a 1.5 mill levy, it must be assumed that the legislature recognized that there would be a great variety of self-insurance plans established by the school districts.